UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JULIO C. ROMO                                CIVIL ACTION

VERSUS                                       NO: 08-4406

MASSMAN CONSTRUCTION CO.                     SECTION: "A" (2)

**ORDER AND REASONS**

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 10)** filed by defendant Massman Construction Co. Plaintiff Julio Romo opposes the motion. The motion, set for hearing on April 15, 2009, is before the Court on the briefs without oral argument. For the reasons that follow, the motion is GRANTED.

**I. BACKGROUND**

This is a personal injury suit filed by plaintiff Julio Romo ("Romo") against his employer Massman Construction Co. ("Massman"). Massman was hired by the State of Louisiana as part of its project to widen the Huey P. Long Bridge which spans the Mississippi River in Jefferson Parish. Massman hired Romo as a welder but his duties were broad, although all related to pier reinforcement on the bridge.

To assist with the work on the bridge, Massman had on site one of its unmanned barges. The barge was used as a work platform for the pier reinforcement. It had no living quarters and no crew. The barge was also equipped with a crane. During

1

the course of the project it became necessary to remove a 40 foot portion of the crane's boom so that it could be used to set the structural steel. To facilitate the boom removal, Massman employees built a staging platform or scaffolding next to the crane with 4 by 4 boards running perpendicular through the crane's struts and 2 by 12 boards running parallel to the crane's boom. The 2 by 12's were secured to the 4 by 4's with nails. Romo was walking on the makeshift platform toward the base of the boom when one of the boards came loose. Romo lost his balance and fell approximately 6 feet to the deck of the barge. Romo fell head first and landed on his right elbow then shoulder and hip. He alleges that he sustained cracked ribs and shoulder injuries for which he underwent corrective surgery and for which he may face permanent disability.

Romo filed this suit pursuant to § 905(b) of the Longshoreman and Harbor Workers Compensation Act, 33 U.S.C. § 901, et seq., based on vessel negligence. Romo alleges that the scaffolding was defective in that it lacked guide wires or railing to support the workers as they maneuvered about. Romo also contends that the scaffolding was defective because the workers who built it were supposed to reinforce the nailing with wires which would have prevented his accident.

Massman now moves for summary judgment contending that

Romo's sole remedies against his employer are provided by the Act. Massman contends that Romo cannot recover because any acts of alleged negligence by Massman occurred in its capacity as an employer rather than in its capacity as a vessel owner.

## II. **DISCUSSION**

At the outset, the Court notes that it is undisputed that Romo is a covered employee under the Longshoreman and Harbor Workers Compensation Act, 33 U.S.C. § 901, et seq. ("LHWCA"). Romo was engaged in maritime employment as a bridge construction worker and he was injured on navigable waters. Massman was Romo's employer and Romo is clearly not a Jones Act seaman. Thus, Romo's exclusive remedy against Massman is provided by the LHWCA,[1] and to the extent that he asserts causes of action under state law or under general maritime law, those claims must fail.

The LHWCA establishes a workers' compensation program for longshoremen and other maritime workers injured or killed in work-related accidents. Watkins v. Bruno Bichofff Shipping, Ltd., 2000 WL 1263254, at *1 n.3 (E.D. La. Sep. 6, 2000) (citing Couch v. Cro-Marine Trans., Inc., 44 F.3d 319, 323 (5th Cir. 1995)). Under the program, the employer must pay statutory benefits regardless of fault but is shielded from liability in

---

[1] Romo has been receiving LHWCA benefits from Massman.

tort.  Id.; Levene v. Pintail Enters., Inc., 943 F.2d 528, 531 (5th Cir. 1991).  The Act also limits the causes of action that a covered employee can bring against a vessel owner.  Section 905(b) of the Act, permits the injured worker to recover from the vessel owner for its *negligence* only.  Couch v Cro-Marine Trans., Inc., 44 F.3d 319, 324 (5th Cir. 1995) (citing 33 U.S.C. § 905(b)).

Frequently, a maritime worker is injured on a vessel owned by his employer.  When this occurs, "the dual capacity doctrine" allows the worker a cause of action against his employer in tort *but only for acts of vessel negligence*.  Levene, 943 F.3d at 531. The worker will still receive no-fault compensation benefits from his employer pursuant to the Act, but the LHWCA continues to immunize the employer from all liability for any acts taken in its capacity *as employer*.  Id.  Thus, "the difference between the capacities in which an employer may act is extremely important." Id.  The employer in its capacity as vessel owner is held to no higher duty than that imposed on an independent vessel owner, and the LHWCA continues to absolutely bar suit for all other acts taken in the capacity as the employer of the injured worker.  Id.

In this circuit the duties owed a maritime worker by his employer in its dual capacity as a vessel owner are governed solely by the Supreme Court's decision in Scindia Steam

4

Navigation Co. v. De Los Santos, 451 U.S. 156 (1981). Levene, 943 F.2d at 533-34. In Scindia, the Court held that a vessel owner has three broad duties to a longshoreman engaged in stevedoring operations.[2] Before operations begin, the owner must exercise "ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety." Levene, 943 F.2d at 533 (quoting Scindia, 451 U.S. at 167). The owner at this time also must warn the stevedore of hidden dangers that could not be discovered by the exercise of ordinary care. Levene, 943 F.2d at 533 (citing Scindia, 451 U.S. at 167; Theriot v. Bay Drilling Corp., 783 F.2d 527 (5th Cir. 1986)).

Once stevedoring operations have begun, the owner has no duty to supervise or inspect the work and must only take care to prevent unreasonable hazards. Id. (citing Scindia, 451 U.S. at 172; Futo v. Lykes Bros. S.S. Co., 742 F.2d 209 (5th Cir. 1984)). However, the vessel owner has a duty to intervene with respect to obvious dangers if it acquires actual knowledge that a condition of the vessel or its equipment poses an unreasonable risk of harm

---

[2] Scindia arose in the context of stevedoring operations but in Levene the Fifth Circuit clarified that the duties enumerated in the decision were not limited to stevedores. Levene, 943 F.2d at 533.

and if the vessel owner acquires knowledge that the stevedore is not exercising reasonable care to protect its employees. <u>Id.</u> (citing <u>Scindia</u>, 541 U.S. at 175-76; <u>Lormand v. Superior Oil Co.</u>, 845 F.2d 536 (5th Cir. 1987)). The vessel owner also has a duty to exercise reasonable care to prevent injuries to stevedores in areas that remain under the active control of the vessel. <u>Levene</u>, 943 F.2d at 533 n.6 (citing <u>Masinter v. Tenneco Oil Co.</u>, 867 F.2d 892, 896-97 (5th Cir. 1989)).

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." <u>TIG Ins. Co. v. Sedgwick James</u>, 276 F.3d 754, 759 (5th Cir. 2002) (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. <u>Id.</u> (citing <u>Anderson</u>, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific

6

facts" showing a genuine factual issue for trial. Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

According to Romo, his accident occurred on September 19, 2007, some time around noon. On that day he was working with his regular crew accompanied by two other men who were helping out because work in their section was slow. (Pla. depo. at 62). Romo was working to get the crane's boom in condition to work on the bridge; specifically, 40 feet of the boom was to be removed. The crane operator had previously lowered the boom so that it was laying across the deck of the barge. Massman's construction foreman, Brad, was also on the barge directing the work. (Id. at 65).

With the boom laying on the deck, Romo and his co-workers placed 4 by 4 lumber across the boom to build the scaffolding or platform. Next, they set 2 by 12 planks on top of the 4 by 4's. (Id. at 66). Romo and his coworkers nailed the 2 by 12's to the 4 by 4's although Romo contends that they were supposed to be tied down with wire to secure them. (Id. at 67). According to

Romo, two older men named Fred and Houston who were "rod busters" were supposed to secure the 2 by 12's to the 4 by 4's with heavy gauge wire. (Id. at 68). When the accident occurred Romo was walking toward the base of the boom carrying some tools when one of the boards gave way, going down under his weight and flipping up on the opposite end. (Id. at 76). Romo contends that the board gave way because it was not wired to the 4 by 4 and he contends that he did not notice this deficiency prior to his accident, although the lack of wire would have been obvious. (Id. at 75-76).

Recapping, Romo cannot prevail against Massman unless he can demonstrate that any injury-causing negligence on Massman's part is attributable to it as a vessel owner (qua vessel) rather than as his employer (qua employer). Of course this matter is before the Court on Massman's motion for summary judgment so the immediate question is whether the Court can, on the current record, determine as a matter of law which "hat" Massman was wearing when it committed the alleged negligent acts. In this regard the Court notes that none of the facts in this case are in dispute—only their legal implications are disputed. Of course, this being a non-jury case the Court will have some greater flexibility in evaluating the issues presented on summary judgment.

The undisputed facts in this case persuade the Court that any acts of negligence on the part of Massman were committed in its capacity as employer and not in its capacity as vessel owner. Massman's construction foreman instructed the construction crew to shorten the crane's boom so that the crane could be used in the next phase of the bridge construction. The construction foreman also instructed the workers to build the faulty scaffolding upon which Romo was injured and supervised them in that task. Building a scaffold or platform from lumber is not a vessel-related duty but rather is something clearly construction-related. Any unsafe condition with respect to the scaffolding boards and how they were fastened together was created by Romo's fellow construction workers when they constructed the platform. Likewise, the fact that the scaffolding was built without railings is attributable to Massman's construction foreman who directed the task of building the platform. All of these acts were done at the direction of and on behalf of Massman in its role as a bridge contractor, and therefore as Romo's employer, and not as a vessel owner.

In further derogation of Romo's claims, none of the <u>Scindia</u> duties are implicated with respect to the faulty scaffolding. The turnover duty is not implicated because the unsafe condition, <u>i.e.</u>, the unsecured 2 by 12 boards and the lack of a railing or

9

guide wires on the platform, was created when Massman's construction workers, who were acting in that capacity, came aboard the vessel and built the platform. Likewise, the active control duty is not at issue because even though Massman's personel clearly had active control of the work area, they did so in their capacity as construction workers. They were not performing vessel-related duties when they built the platform. And because even Romo failed to notice that the boards were not properly tied, the condition of the boards was clearly a hidden one for which the duty to intervene was not triggered. Similarly, the facts do not suggest that the duty to intervene applies with respect to the lack of railings.

In addition to alleging that the untied boards created an unsafe condition, Romo also claims that Massman was negligent as a vessel owner because it should have implemented/installed a proper harness system because as vessel owner it was permitting the dismantling and retrofitting of the crane's boom. Romo argues that Massman qua vessel had a duty to intervene when the construction workers began working on the raised platform.

Assuming arguendo that the platform presented an obvious unreasonable risk of harm to the workers, the Court nevertheless remains unpersuaded that the duty to intervene applies under these facts. The duty to intervene is imposed upon the vessel

and its personnel.  In a dual capacity case like this one, all of the vessel's personnel who would have been called upon to intervene in Romo's work were also employed by Massman qua employer.  None of the evidence reviewed by the Court suggests that any of the other employees present were engaged in vessel-related duties during the time that Romo and his co-workers were working on the platform.  Instead, all were engaged in acts taken in pursuit of Massman's role as an employer rather than as a vessel owner.  The only way in which the Court could find that Massman breached the duty to intervene would be to impute omissions made by Massman's personnel qua employer to Massman's personnel qua vessel simply because those persons wear two hats for Massman.  However, such a result cannot stand because the Fifth Circuit has made clear that the dual capacity doctrine was never meant to erode the absolute immunity given to employers of covered LHWCA employees for acts of negligence committed in its capacity as the employer.

In sum, Romo is a covered employee under the LHWCA.  As such his exclusive means of recovery against Massman, his employer, is for acts of negligence committed in its role as a vessel owner. Massman has demonstrated that the acts upon which Romo's claims are based were taken in its role as Massman's employer. Consequently, Massman is entitled to judgment as a matter of law

on Romo's claims.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 10)** filed by defendant Massman Construction Co. is **GRANTED**. Plaintiff's complaint is **DISMISSED**.

May 4, 2009

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE